**IN THE UNITED STATES DISCTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**MCALLEN DIVISION**

| | | |
|---|---|---|
| **SILVANA ESPINOZA AND** | § | |
| **JUAN ESPINOZA,** | § | |
| **PLAINTIFFS,** | § | |
| | § | |
| **vs.** | § | **Civil Action No. 7:14-cv-00378** |
| | § | |
| **STATE FARM LLOYDS, RICHARD** | § | |
| **FREYMANN AND,** | § | |
| **RICHARD LEE WALLIS,** | § | |
| **DEFENDANTS.** | § | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants State Farm Lloyds ("State Farm") and Richard Lee Wallis file this Motion for Summary Judgment because the appraisal is now complete, and State Farm's payment of the appraisal award entitles Defendants to summary judgment on Plaintiffs' contractual and extra-contractual claims.

**I.**
**SUMMARY**

1.      Plaintiffs brought this suit against Defendants alleging various claims concerning damage to their dwelling from a storm occurring on March 29, 2012**.**  Plaintiffs invoked the appraisal provision of the Homeowners Policy.  Broadly speaking, the appraisal provision allows either party to invoke a process by which the amount of the loss is determined by agreement of appraisers or, if necessary, an umpire mutually agreed to by the appraisers or appointed by the court.  The amount of loss in this case was set by the umpire and one of the appraisers.  State Farm timely paid the appraisal award.  Payment of the appraisal award resolves and disposes of all claims in this lawsuit.  Plaintiffs are estopped from maintaining a breach of contract claim as a matter of law based on State Farm's timely payment of the appraisal award.  Additionally, Plaintiffs have no extra-contractual claims because they have suffered no

independent injury that would otherwise entitle them to damages, and State Farm timely investigated their claim.

## II.
## SUMMARY JUDGMENT EVIDENCE

2.      In support of this motion, State Farm attaches the following summary judgment evidence filed herewith and incorporated by reference as if fully set forth herein:

Exhibit A:      Plaintiffs' Homeowners Policy

Exhibit B:      Declaration of Claim Specialist Jessica Harris

        Exhibit B-1:      State Farm Claim Activity File Notes Excerpts

        Exhibit B-2:      Signed Repair Contract with RPC Roofing

        Exhibit B-3:      May 28, 2012, State Farm Estimate, Draft and Contents Inventory Summary

        Exhibit B-4:      March 6, 2015, Plaintiffs' Appraisal Demand

        Exhibit B-5:      March 25, 2015, State Farm's Designation of Appraiser

        Exhibit B-6:      Appraisal Award

        Exhibit B-7:      September 9, 2016, State Farm Letter Tendering Payment of Appraisal Award

Exhibit C:      *Stewart v. Geovera Specialty Ins.*, No. H-14-3162 (S.D. Tex., Oct. 21, 2015, Memorandum and Order, Judge Ewing Werlein, Jr.)

Exhibit D:      *Tabor v. State Farm Lloyds,* No. 7:14-CV-389 (S.D. Tex. April 9, 2015, Memorandum and Order, Judge Micaela Alvarez)

## III.
## UNDISPUTED FACTS

3.      At the time of loss, Plaintiffs' house was insured under a State Farm Homeowners Policy for approximately $168,400.00 (Coverage A, Dwelling limit).[1]   On or about May 23, 2012, a claim was reported for damage to Plaintiffs' house from a weather event

---

[1]      *Ex. A*, Plaintiffs' Policy.

occurring on March 29, 2012.[2]  State Farm spoke with Plaintiff Silvana Espinoza on or about

May 27, 2012, to get additional information regarding the loss and schedule an inspection of the

property.[3]

4.      Adjuster Richard Wallis inspected the property on May 28, 2012, with Plaintiff

Juan Espinoza and Plaintiffs' contractor of choice, Frederick Vasquez from RPC Roofing,

present.[4]  Wallis estimated storm damage to the dwelling in the amount of $12,346.89, Coverage

A, Dwelling replacement cost value.[5]  After subtracting the Policy's $3,368.00 deductible, the

Coverage A, Dwelling actual cash value loss was $8,978.89.[6]  Depreciation was not deducted

due to the fact that Plaintiff Juan Espinoza presented a signed contract for repairs per the

State Farm estimate for all observed damage.[7]  At the end of the inspection, Wallis explained the

findings and estimate to Plaintiff Juan Espinoza and his contractor.[8]  Wallis then issued Plaintiff

Silvana Espinoza a draft which included Coverage A, Dwelling loss in the amount of $8,978.89

(actual cash value) and payment of $350.00 for Coverage B, Personal Property loss and provided

Plaintiff Juan Espinoza a copy of the estimate.[9]

5.      On or about July 4, 2012, State Farm received a completion of repairs notice and

request for supplementation for an additional 4.33 squares of shingles as well as overhead and

profit.[10]  Because Plaintiffs' contractor of choice was present at the inspection and agreed to the

scope and amount of the State Farm estimate for repairs, no supporting documentation or

explanation for the extra shingles were provided and the repairs lacked complexity and

---

[2]      *Ex. B*, Declaration of Jessica Harris at ¶ 5; *Ex. B-1*, Claim Activity File Notes Excerpts.

[3]      *Ex. B* at *¶ 6*; *Ex. B-1*, Claim Activity File Notes Excerpts.

[4]      *Id.*

[5]      *Id.*; *Ex. A*, Policy; *Ex. B-1*, Claim Activity File Notes Excerpts.

[6]      *Id.*

[7]      *Ex. B* at *¶ 6*; *Ex. B-2,* Signed Repair Contract with RPC Roofing.

[8]      *Ex. B* at ¶ 6; *Ex. B-1*, Claim Activity File Notes Excerpts.

[9]      *Id.*; *Ex. B-3*, State Farm Estimate, Draft and Contents Inventory Summary.

[10]     *Ex. B* at ¶ 7.

coordination to warrant overhead and profit, no supplemental payment was made at that time.[11] State Farm spoke with Plaintiff Silvana Espinoza to explain that the contractor's request for supplemental payments had been received but would not be paid at that time without additional documentation and support.[12]   Plaintiff Silvana Espinoza indicated that she understood, and State Farm closed Plaintiffs' claim.[13]   State Farm heard nothing further from Plaintiffs regarding this claim until it was served with the lawsuit on or about April 28, 2014.[14]

6.      Plaintiffs filed this lawsuit against State Farm, Richard Freymann[15] and Richard Wallis, without any pre-suit demand or notice.[16]   On March 6, 2015, Plaintiffs demanded appraisal and designated Shannon Cook as appraiser.[17]   On March 25, 2015, State Farm responded to the appraisal demand and designated Darrell Edwards as appraiser.[18] The appraisers selected Cecil Parker to serve as umpire.[19]

7.      On September 1, 2016, State Farm received an appraisal award signed by appraiser Edwards and umpire Parker, setting the amount of loss at $20,372.51, on a replacement cost basis, and $18,184.06, on an actual cash value basis.[20]   On September 9, 2016, State Farm timely tendered to Plaintiffs, through their counsel, payment of the award (less prior payment, depreciation and deductible) in the amount of $5,837.17.[21]   In the payment letter, State Farm extended the period for Plaintiffs to claim replacement cost benefits of $2,188.45 until

---

[11]     *Id.*

[12]     *Id.*

[13]     *Id.*

[14]     *Ex. B* at ¶ 8.

[15]     Richard Freymann was terminated as a party to the lawsuit on October 22, 2014.

[16]     Plaintiffs' Original Petition.  Plaintiffs' claims against Richard Wallis are derivative of, and based on, the same facts as the claims asserted against State Farm.

[17]     *Ex. B* at ¶ 9; *Ex. B-4*, Plaintiffs' Appraisal Demand.

[18]     *Ex. B* at ¶ 9; *Ex. B-5*, State Farm's Designation of Appraiser.

[19]     *Ex. B* at ¶ 9.

[20]     *Ex. B* at ¶ 10; *Ex. B-6*, Appraisal Award.

[21]     *Ex. B* at ¶ 11; *Ex. B-7*, State Farm Letter Tendering Payment of Appraisal Award.

July 11, 2018, if they complete repairs/replacement of the damaged property identified in the appraisal award and submit appropriate documentation of the completed repairs/replacement within thirty (30) days after the work is completed.[22]  To date, Plaintiffs have not submitted any additional repair documentation or requested release of the replacement cost benefits.[23]

## IV.
## ARGUMENT AND AUTHORITIES

**A.**     **State Farm's payment of the appraisal award estops Plaintiffs from maintaining a breach of contract claim.**

8.     It is well settled that "[a]n insurer does not breach the insurance contract where, as here, it pays all damages determined by the appraisal."[24]  That is because "[t]he effect of an appraisal award is to estop one party from contesting the issue of damages in a suit on the insurance contract, leaving only the question of liability for the court."[25]  Here, no question as to liability remains because State Farm has paid the appraisal award.  Under Texas law, a contract claim does not survive the insurer's payment of an appraisal award.  For instance, in *Franco v. Slavonic Mutual Fire Insurance*, the insureds, after invoking appraisal, subsequently alleged that "payment of an appraisal award is not dispositive of the Franco Family's entire breach of

---

[22]     *Id.*

[23]     *Ex. B* at ¶ 11.

[24]     *Scalise v. Allstate Texas Lloyds*, No. 7:13-CV-178, 2013 U.S. Dist. LEXIS 179692, at *14 (S.D. Tex. Dec. 20, 2013) (citing *Breshears v. State Farm Lloyds*, 155 S.W.3d 340, 344 (Tex. App. – Corpus Christi 2004, pet. denied) (insurer complied with every requirement of contract where it participated in appraisal process and paid amount set by appraisers and umpire)); *see also Devonshire Real Estate & Asset Mgmt., LP v. Am. Ins. Co.*, No. 3:12-CV-2199-B, 2014 U.S. Dist. LEXIS 135939, at *44 (N.D. Tex. Sept. 26, 2014) (quoting *Scalise*); *Caso v. Allstate Tex. Lloyds*, No. 7:12-CV-478, 2014 U.S. Dist. LEXIS 15279, at *14-24 (S.D. Tex. February 7, 2014) (finding insured's payment of appraisal award estopped insured's breach of contract claim); *Waterhill Cos. v. Great Am. Assur. Co.*, No. H-05-4080, 2006 U.S. Dist. LEXIS 15302, at *7 (S.D. Tex. March 16, 2006) (insurer did not breach contract when it paid appraisal award); *Anderson v. Am. Risk Ins. Co., Inc.*, No. 01-15-00252 CV, 2016 Tex. App. LEXIS 6538, at *9-12 (Tex. App.—Houston [1st Dist.] June 21, 2016, no pet. h.) (affirming summary dismissal on insured's entire lawsuit based on the insurer's timely payment of the appraisal award).

[25]     *Wells v. Am. States Preferred Ins. Co.*, 919 S.W.2d 679, 683 (Tex. App.—Dallas 1996, writ denied); *see also Lundstrom v. USAA*, 192 S.W.3d 79, 87 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (citing *Franco v. Slavonic Mut. Fire Ins.*, 154 S.W.3d 777, 786 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

contract cause of action against Slavonic Mutual."[26]  The appellate court disagreed, holding that because the insurer paid the full amount of the appraisal award, the insureds were estopped from maintaining a breach of contract claim against the insurer.[27]

9.      In *Anderson*, the insurer demanded appraisal after suit was filed and paid the insured $33,412.68 under the award.[28]  The First Court of Appeals held that "[b]y payment of the full amount of an appraisal award, the insurer 'complie[s] with every requirement of the contract, [and] it cannot be found to be in breach.'"[29]  Simply put, compliance with the contractual appraisal award negates any claim for breach of contract as a matter of law.  Like the insurers in *Franco* and *Anderson*, State Farm fully participated in the appraisal process and timely tendered payment of the appraisal award.  Accordingly, as a matter of law, there is no breach of contract, and State Farm is entitled to summary judgment on Plaintiffs' breach of contract claim.[30]

---

[26]     *Franco*, 154 S.W.3d at 787.

[27]     *Id.; see also Burks v. Metropolitan Lloyds Ins. Co.,* No. H-14-591, 2015 U.S. Dist. LEXIS 88729, at * 9-11 (S.D. Tex., July 8, 2015); *Stewart v. Geovera Specialty Ins. Co.*, No. H-14-3162 (S.D. Tex. Oct. 21, 2015, Memorandum and Order, Judge Ewing Werlein, Jr.) (attached hereto as *Exhibit C*) (timely payment of appraisal award entitled insurer to summary judgment on all claims, including Chapter 542 prompt payment claim); *Gardner v. State Farm Lloyds*, 76 S.W.3d 140, 143-44 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (same).

[28]     *Anderson*, 2016 Tex. App. LEXIS 6538, at *4, *6-7.

[29]     *Id.* at *10-11 (quoting *Breshears*, 155 S.W.3d at 343).

[30]     *See Anderson*, 2016 Tex. App. LEXIS 6538; *Franco*, 154 S.W.3d 777; *see also Michels v. Safeco Ins. Co. of Ind.*, 544 Fed. Appx. 535, 542 (5th Cir. 2013) (affirming district court's granting of insurer's motion for summary judgment after payment of the appraisal award); *Richardson E. Baptist Church v. Philadelphia Indem. Ins. Co., et al*., No. 05-14-01491 CV, 2016 Tex. App. LEXIS 3267, at *17 (Tex. App.—Dallas, March 30, 2016, no pet. h.) (affirming summary judgment for carrier); *Breshears*, 155 S.W.3d at 345 (holding insurer entitled to summary judgment on insured's breach of contract claim because the insurer participated in the appraisal process and paid the appraisal award); *Toonen v. United Servs. Auto Ass'n*, 935 S.W.2d 937, 940 (Tex. App.—San Antonio 1996, no writ) (holding insurer was entitled to summary judgment on breach of contract claim because it tendered appraisal award pursuant to the contract); *Providence Lloyds Ins. Co. v. Crystal City Indep. Sch. Dist.*, 877 S.W.2d 872, 875 (Tex. App.—San Antonio 1994, no writ) (holding trial court erred by allowing a trial of a breach of contract claim after insurer promptly paid an appraisal award).

**B.** **There are no fact issues that prevent summary judgment on Plaintiffs' breach of contract claim because Plaintiffs can repair the loss in order to recovery replacement cost benefits.**

10.      "[C]ourts across the country . . . have universally held that [a replacement cost provision] requires repair or replacement of the destroyed property before the insured is entitled to recover replacement cost damages."[31]  Replacement cost benefits insure against the risk that repairing or replacing property will cost more than the actual cash value of the property.  Actual cash value is the value of the property in its depreciated state.  "[R]eplacement cost coverage insures against the expected depreciation of the property."[32]  Thus, replacement cost benefits place an insured in a better position than before the loss.  For this reason, most replacement cost policies require actual repair or replacement of the damaged property as a condition precedent to recovery."[33]

11.      Here, the Policy states "until actual repair or replacement is completed, we will pay only the actual cash value at the time of the loss" and "when the repair is *actually completed*, we will pay the covered additional amount you actually and necessarily spend to repair or replace the damaged part of your property."[34]  The Policy allows two years for these repairs: "[T]o receive any additional payments on a replacement cost basis, you must complete the actual

---

[31]      *Fitzhugh 25 Partners, L.P. v. KILN Syndicate KLN 501*, 261 S.W.3d 861, 863 (Tex. App.— Dallas 2008, pet. denied); *see also Lerer Realty Corp. v. MFB Mut. Ins. Co*., 474 F.2d 410, 413 (5th Cir. 1973) ("If restoration is made, then, and only then, the liability of MFB would be calculated under the endorsement."); *Devonshire*, No. 3:12-CV-2199-B, 2014 U.S. Dist. LEXIS 135939, at *44 ("Here, the plain language of the parties' contract dictates that Devonshire may only recover on a replacement cost basis *after* it has completed repairs.") (emphasis in original); *Cent. Mut. Ins. Co. v. White Stone Props*., No. A-12-CA-275-SS, 2014 U.S. Dist. LEXIS 35797, at *15 (W.D. Tex. Mar. 19, 2014) (noting that "courts have routinely enforced replacement cost provisions") (citations omitted); *O'Quinn v. Gen. Star Indem. Co.*, No. 1:13-CV-471, 2014 U.S. Dist. LEXIS 107484, at *19 (E.D. Tex. Aug. 5, 2014) (Giblin, Mag. J.) ("An insured cannot recover repair or replacement costs until he or she actually repairs or replaces the insured structure."); *Ghoman v. N.H. Ins. Co*., 159 F. Supp. 2d 928, 932 (N.D. Tex. 2001) ("Obviously, an insured cannot recover repair or replacement costs unless and until he actually repairs or replaces the insured structure.") (citations omitted) (Kaplan, Mag. J.).

[32]      *D&S Realty, Inc. v. Markel Ins. Co*., 816 N.W.2d 1, 15 (Neb. 2012).

[33]      *Id*.

[34]      *Ex. A*, at Section 1 – Loss Settlement, Espinoza 53-135N-169-000352.

-7-

repair or replacement of the damaged part of the property within two years after the date of loss, and notify us within 30 days after the work has been completed."[35]

12.    It is undisputed that Plaintiffs have not repaired the additional losses identified in the appraisal award.  Until they do, they are not entitled to replacement cost benefits under the Policy.  When State Farm paid the appraisal award it notified Plaintiffs that they would have to repair the property by July 11, 2018—over six years from the date of loss—to recover the depreciation included in the award amount.[36]  Thus, Plaintiffs have been given at least (and actually more than) the full benefit of the two-year replacement cost period in the Policy based on State Farm's exclusion of the time period from its first inspection to the date the award was paid.

13.    With the extended time period to perform repairs, Plaintiffs retain the ability to recover replacement cost benefits—subject to the contractual condition precedent of performing actual repairs.  But allowing Plaintiffs to recover replacement cost benefits without completing repairs vitiates the contract and improperly gives Plaintiffs a windfall because the parties went to appraisal:

> It is the act of replacing the property that causes the insured to suffer an additional loss for which he purchased additional coverage.  To allow an insured to recover replacement costs in the absence of actual replacement would permit the insured to recover for a loss he has not suffered.  Accordingly, we conclude that [the insured] was required to replace the damaged property as a condition precedent to its recovery under the policy and that its failure to do so negates its entitlement to recover replacement costs.[37]

14.    The universal enforcement by courts of replacement cost provisions requiring repairs be made to recover depreciation avoids putting an insured in a better position than before the loss.

---

[35]    *Id.*

[36]    *Ex. B-7*, State Farm Letter Tendering Payment of Appraisal Award.

[37]    *Fitzhugh*, 261 S.W.3d at 864.

**C.     Without a breach of contact claim, Plaintiffs cannot maintain any extra-contractual causes of action.**

15.     Because the amount of loss has been determined by appraisal and timely paid, Plaintiffs can no longer maintain any of their extra-contractual causes of action because they are derivative of Plaintiffs' defunct breach of contract claim.  Plaintiffs' Petition alleges extra-contractual causes of action against Defendants for violation of Chapters 541 and 542 of the Texas Insurance Code, fraud, conspiracy to commit fraud, and breach of the common law duty of good faith and fair dealing.[38]  But the facts giving rise to Plaintiffs' extra-contractual causes of action relate solely to State Farm's handling of Plaintiffs' insurance claim.  Merely showing a *bona fide* dispute about the insurer's liability on the contract does not rise to the level of bad faith, and Plaintiffs have not alleged any facts that would give rise to an independent injury claim.[39]  For these reasons, Defendants are entitled to summary judgment on each of Plaintiffs' extra-contractual causes of action.

**(i.)     No bad faith, Insurance Code, or fraud claims absent a breach of contract; no actionable misrepresentations.**

16.     The general rule in Texas is that an insured cannot prove a bad faith claim absent a breach of contract.[40]  The only recognized exceptions to this rule are if the insurer "commit[s] some act, so extreme, that would cause injury independent of the policy claim" or fails "to timely investigate its insureds' claim."[41]  The principle stems from the fact that the threshold for bad faith can be reached only when a breach of contract is accompanied by an independent tort; evidence that merely shows a *bona fide* dispute about the insurer's liability on the contract (like

---

[38]     *See* Plaintiffs' Petition at ¶¶ 35-55 and 58-71.

[39]     *See Charla G. Aldous PC v. Lugo*, No. 3:13-CV-3310-L, 2014 U.S. Dist. LEXIS 159684, at *12–13 (N.D. Tex. Nov. 12, 2014) ("There can be no recovery against an insurer for extra-contractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of that which would have resulted from a wrongful denial of policy benefits") (quoting *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002)).

[40]     *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995); *Toonen*, 935 S.W.2d at 941.

[41]     *Stoker*, 903 S.W.2d at 341; *Toonen*, 935 S.W.2d at 941-42.

the coverage dispute here) does not rise to the level of bad faith.[42]  Plaintiffs' causes of action

under section 541.060 of the Insurance Code relate to Defendants' claims handling.[43]  Liability

under Texas Insurance Code Chapter 541 is reviewed under the "same standard as a common

law bad faith claim," and requires the same predicate for recovery.[44]  Thus, in cases with similar

facts to those here, courts have repeatedly held that an insurer's payment of an appraisal award

bars recovery of extra-contractual claims.[45]  Further, "[e]vidence of proper completion of the

appraisal process and tendering of payment" shows there are no genuine issues of material fact

for Plaintiffs' claims for fraud and conspiracy to commit fraud.[46]  The alleged misrepresentations

pled by Plaintiffs[47] are not actionable as a matter of law.[48]  Post-loss misrepresentations, like

---

[42]    *Transp. Ins. Co. v. Moriel*, 879 S.W.2d 10, 17-18 (Tex. 1994); *Nat'l Union Fire Ins. Co. v. Hudson Energy Co.*, 780 S.W.2d 417, 426 (Tex. App.—Texarkana 1989), *aff'd*, 811 S.W.2d 552 (Tex. 1991).

[43]    *See* Plaintiffs' Petition at ¶¶ 24-28, 40-44, and 59-63.

[44]    *See Higginbotham v. State Farm Mut. Auto. Ins. Co*., 103 F.3d 456, 460 (5th Cir. 1997) (holding "Texas courts have clearly ruled that these extra-contractual tort claims require the same predicate for recovery as bad faith causes of action in Texas") (citations omitted); *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.,* 906 F. Supp. 2d 642, 649 (S.D. Tex. 2012) (citations omitted); *Douglas v. State Farm Lloyds,* 37 F. Supp. 2d 532, 544 (S.D. Tex. 1999); *Tex. Mut. Ins. Co. v. Sara Care Child Care Ctr., Inc.,* 324 S.W.3d 305, 317 (Tex. App. – El Paso 2010, pet. denied); *Spicewood Summit Office Condominiums Ass'n, Inc. v. Amer. First Lloyd's Inc. Co.,* 287 S.W.3d 461, 648 (Tex. App.—Austin 2009, pet. denied).

[45]    *See, e.g., Anderson*, 2016 Tex. App. LEXIS 6538, at *14-18; *Bernstien v. Safeco Ins. Co.*, No. 05-13-01533-CV, 2015 Tex. App. LEXIS 6699, at *4-5 (Tex. App.—Dallas, June 30, 2015, no pet.); *Toonen*, 935 S.W.2d at 941-942; *Blum's Furniture Co. v. Certain Underwriters at Lloyds London*, 459 Fed. Appx. 366, 369 (5th Cir. 2012)

[46]    *Tabor v. State Farm Lloyds,* No. 7:14-CV-389, at *16 (S.D. Tex. April 9, 2015) (attached hereto as *Exhibit D*); *see also Anderson*, 2016 Tex. App. LEXIS 6538, at *10, *11 and *13 (dismissing insured's Chapter 541 claim and bad faith claim when insurer paid pursuant to an appraisal award and no evidence of an independent injury or untimely investigation was presented by the insured and dismissing insured's fraud claim); *Barry v. Allstate Tex. Lloyds,* No. 4:14-cv-00870, 2015 U.S. Dist. LEXIS 40953, at *15-17 (S.D. Tex. March 31, 2015) (dismissing fraud claim on summary judgment after payment of appraisal award).

[47]    Plaintiffs' alleged misrepresentations are generally that Defendants misrepresented to Plaintiffs that the damage to the Property was not covered under the Policy as well as  "(1) failing to conduct a reasonable inspection and investigation of Plaintiffs' damages; (2) stating that Plaintiffs' damages were less severe than they in fact were; (3) using their own statements about the non-severity of the damage as a basis for denying properly covered damages and/or underpaying damages; and (4) failing to provide an adequate explanation for the inadequate compensation Plaintiffs received."  Plaintiffs' Petition at ¶¶ 24 and 40.

those alleged by Plaintiffs, will not support claims under the Texas Insurance Code.[49]  Plaintiffs have done nothing in reliance of the alleged post-loss misrepresentations, nor have they been harmed other than the injury which would always occur when insureds are not paid what they contend is due.[50]  Additionally, Plaintiffs conspiracy to commit fraud claim also fails because it is derivative of the underlying fraud claim which fails.[51]

17.     Defendants promptly investigated Plaintiffs' claim after they reported it.[52] State Farm participated in the appraisal process and timely tendered payment of the appraisal award.[53]  Because the facts are undisputed that Defendants timely investigated the claim and then later paid the amount of loss based on the appraisal award and Plaintiffs have not alleged any facts which would give rise to an independent injury claim, Defendants are entitled to summary judgment as a matter of law on Plaintiffs' extra-contractual claims.

**(ii.)     Timely payment of an appraisal award precludes prompt payment damages under Chapter 542 of the Texas Insurance Code.**

18.     State Farm received the appraisal award on September 1, 2016, and tendered payment of the award on September 9, 2016—within five (5) business days after receipt of the

---

[48]     *Griggs v. State Farm Lloyds*, 181 F.3d 694, 701 (5th Cir. 1999) (statements about claims being handled professionally "more in the nature of non-actionable puffery than actionable representations of specific material fact"); *Druke v. Fortis Health*, No. 5:06-CV-00052, 2007 U.S. Dist. LEXIS 402, at *13-16 (S.D. Tex. Jan. 4, 2007) (general assurance policy would be honored is not a material misrepresentation that can support a fraud claim); *Avila v. Loya*, No. 07-04-0096-CV, 2005 Tex. App. LEXIS 6324, at *13 (Tex. App.—Amarillo August 10, 2015, no pet.); *Provident Am. Ins. Co. v. Castaneda*, 988 S.W.2d 189, 200 n.55 (Tex. 1998) (citing *Royal Globe Ins. Co. v. Bar Consultants, Inc.*, 577 S.W.2d 688, 694-95 (Tex. 1979)); *Gulf States Underwriters of La., Inc. v. Wilson*, 753 S.W.2d 422, 430-31 (Tex. App.—Beaumont 1988, writ denied) (letter to insured opting not to renew policy did not constitute misrepresentation).

[49]     *Id.*

[50]     *See Royal Globe Inc. Co.*, 577 S.W.2d at 694; *Walker v. Fed Kemper Life Assurance Co.*, 828 S.W.2d 442, 453 (Tex. App.—San Antonio 1992, no writ) ("As a result, a post-loss denial of liability for a questionable claim is not actionable under the DTPA or the Insurance Code.").

[51]     *See Tilton v. Marshall,* 925 S.W.2d 672, 681 (Tex. 1996).

[52]     *Ex. B* at ¶¶ 5-7; *Ex. B-1*, Claim Activity File Notes Excerpts.

[53]     *Ex. B* at ¶¶ 9-11; *Ex. B-7*, State Farm Letter Tendering Payment of Appraisal Award.

award.[54]  Under Texas law, full and timely payment of the appraisal award "precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law."[55]  In *Anderson*, the Houston Court of Appeals held that "[b]ecause the summary judgment evidence conclusively demonstrates that [the insurer] fully and timely paid the appraisal award, [the insured] is precluded from maintaining her prompt payment claim as a matter of law."[56]  As explained in *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.*, "when the appraisal clause is invoked, a delay in payment pursuant to the appraisal process does not constitute a §542.058 violation."[57]  Similarly, as explained in *Scalise v. Allstate Texas Lloyds* "an insurer commits no prompt payment violation when it submits to the delay inherent in the contractual appraisal process (in this case, invoked by the insured) before paying all covered damages determined by that process."[58]  When the insured in *Gabriel v. Allstate Texas Lloyds* argued that Allstate breached the prompt-payment requirements of Chapter 542 "by failing to pay the appraisal-determined amount of loss during the initial adjustment of the claim," the court was clear:  "these arguments misinterpret the relevant authorities and are vitiated by the policy, statute, and record."[59]

---

[54]   *Id.*

[55]   *Stewart*, No. H-14-3162 at * 8 (attached hereto as *Exhibit C*); *In re Slavonic Mut. Fire Ins. Ass'n*, 308 S.W.3d at 563-64; *see also Blum's Furniture Co.*, 459 Fed. Appx. at 369 (affirming district court's entire summary judgment for insurer, including prompt payment claim, based on timely payment of appraisal award); *Breshears*, 155 S.W.3d at 344; *Bernstien*, 2015 Tex. App. LEXIS 6699, at *3; *Amine v. Liberty Lloyds of Tex. Ins. Co.*, No. 01-06-00396-CV, 2007 Tex. App. LEXIS 6280, at *4-7 (Tex. App.—Houston [1st Dist.] Aug. 9, 2007, no pet.); *Dizdar v. State Farm Lloyds, et al.*, No. 7:14-CV-00102, 2016 U.S. Dist. LEXIS 13355, at *18-19 (S.D. Tex., Feb. 4, 2016) (Alvarez, J.) ("In Texas, courts have constantly held that 'full and timely payment of the appraisal award under the policy precludes an award of penalties under the Insurance Code's prompt payment provisions as a matter of law'").

[56]   *Anderson*, 2016 Tex. App. LEXIS 6538, at *13.

[57]   *Mag-Dolphus, Inc. v. Ohio Cas. Ins. Co.*, 906 F. Supp. 2d 642, 652 (S.D. Tex. 2012); *see also Blum's*, 459 Fed. Appx. at 369 (affirming district court's entire summary judgment for insurer, including prompt payment claim, based on timely payment of appraisal award).

[58]   *Scalise*, 2013 U.S. Dist. LEXIS 179692, at *18–19.

[59]   *Gabriel v. Allstate Tex. Lloyds*, No. 7:13-CV-181, 2013 U.S. Dist. LEXIS 186032, at *21 (S.D. Tex. Nov. 1, 2013).

-12-

19.     Because State Farm timely paid the award, there is no violation of the Texas Insurance Code's prompt payments deadlines.  Thus, State Farm is entitled, as a matter of law, to summary judgment on Plaintiffs' claim for alleged violations of Chapter 542 of the Texas Insurance Code.

### V.
### <u>PRAYER</u>

20.     By participating in the appraisal process, the parties agreed the appraisal award would "set the amount of loss."  Appraisal has concluded and a binding appraisal award was issued setting the amount of loss.  State Farm timely paid the award and there are no remaining issues regarding damages or liability; therefore, as a matter of law, Plaintiffs cannot maintain a breach of contract action.  Plaintiffs' extra-contractual claims, which are derivative of their breach of contract claim, also fail.  Accordingly, Defendants are entitled to summary judgment as a matter of law on all of Plaintiffs' claims alleged in this suit.

21.     Defendants respectfully request that the Court grant summary judgment in favor of Defendants on all of Plaintiffs' claims.  Defendants further pray for all other relief the Court finds just and equitable.

Respectfully submitted,

**JONES, ANDREWS & ORTIZ, P.C.**


By: ___*/s/ Ray R. Ortiz*_____
        Ray R. Ortiz
        State Bar No. 15324280
        Southern District Federal ID 14026
10100 Reunion Place, Suite 600
San Antonio, Texas  78216
Telephone: 210/344-3900
Facsimile: 210/366-4301
Email: ray@jao-law.com
        rrosupport@jao-law.com

**ATTORNEY IN CHARGE FOR
DEFENDANTS, STATE FARM LLOYDS AND
RICHARD LEE WALLIS**

**OF COUNSEL:**

Jonathan Law
State Bar No. 24028656
Southern District Federal ID 1031088

## <u>CERTIFICATE OF SERVICE</u>

On October 19, 2016, the foregoing document was served in compliance with the Federal Rules of Civil Procedure by mail, hand delivery, telecopier transmission, or CM/ECF electronic notice to the following:

J. Steve Mostyn
René M. Sigman
J. Ryan Fowler
Christina Illiana Saldivar
The Mostyn Law Firm
3810 West Alabama Street
Houston, Texas 77027

Gilberto Hinojosa
Law Office of Gilberto Hinojosa & Associates P.C.
622 East Saint Charles Street
Brownsville, TX 78520

*/s/ Ray R. Ortiz*
Ray R. Ortiz